**ARMCO, INC., Plaintiff,**

v.

**RELIANCE NATIONAL INSURANCE COMPANY, et al., Defendants.**

No. C–1–96–1149.

United States District Court,
S.D. Ohio,
Western Division.

Aug. 26, 1998.

See also, 1997 WL 311474.

David Charles Horn, Frost & Jacobs, Cincinnati, OH, for Armco Inc, plaintiff.

Thomas Spencer Shore, Jr., Jeffrey S. Routh, Rendigs Fry Kiely & Dennis, Cincinnati, OH, James M Hoey, Bianca M. Loftus, Chicago, IL, Gary Lee Herfel, Furnier Thomas Rosenberg & Herfel LLP, Cincinnati, OH, for Reliance National Insurance Company and Home Ins. Co., defendants.

**ORDER GRANTING IN PART AND DE-- NYING IN PART DEFENDANT HOME INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING IN PART AND DENYING AS MOOT IN PART PLAINTIFF'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

DLOTT, J.

This matter is before the Court on the Motion for Summary Judgment of Defendant Home Insurance Company (doc. # 29), the Motion for Partial Summary Judgment of Plaintiff Armco, Inc. Against Defendant Reliance National Insurance Company (doc. # 30), and the Motion for Partial Summary Judgment of Plaintiff Armco, Inc. Against Defendant Home Insurance Company (doc. # 31). For the reasons stated below, Defendant Home Insurance Company's Motion for Summary Judgment is hereby **GRANTED IN PART AND DENIED IN PART,** Plaintiff's Motion for Partial Summary Judgment Against Defendant Reliance National Insurance Company is hereby **DENIED IN PART AND DENIED AS MOOT IN PART,** and Plaintiff's Motion for Partial Summary Judgment Against Defendant Home Insurance Company is hereby **DENIED IN PART AND DENIED AS MOOT IN PART.**

## I. BACKGROUND

Plaintiff Armco, Inc. ("Armco") brings this action against Defendants Reliance National Insurance Company ("Reliance") and Home Insurance Company ("Home") to recover under insurance policies issued by the Defendants for losses resulting from an interruption in business that arose at one of its facilities on March 1, 1994. Specifically, Armco alleges that Defendants were to provide to it one half of a combined total of $10,000,000 in business interruption insurance. Armco had an insurance policy with Lloyds of London ("Lloyds"), which is not a party to this suit, for $5,000,000 and claims that its policy with Reliance, the primary insurer, and its policy with Home, the secondary insurer, were to provide another $5,000,000 in combined coverage. Through their Motions, the parties seek to establish as a matter of law all or certain issues related to

what coverage is owed to Plaintiff by Home and Reliance under these policies.

## II. LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the movant has the burden of showing that no genuine issue of material fact exists, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Summary judgment is not appropriate if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. ANALYSIS

### A. Home's Motion for Summary Judgment

#### 1. The Suit Limitation Clause

Defendant Home first contends that Armco's suit is barred because Armco failed to bring this action within twelve months after its discovery of the business interruption for which it seeks coverage, as required by a suit

limitation clause in Armco's policy with Home.[1] Armco responds that Home should be barred from asserting this defense based upon waiver, estoppel, ambiguity in the contract as to the clause's applicability, and the unreasonableness of the clause.

■ The Court agrees with Home that it has not waived this defense because it did not raise the affirmative defense of statute of limitations in its Answer, as Armco claims. This defense arises out of the terms of the policy as contained in the suit limitation clause, rather than state law, and was pled as a defense in its Answer by either the assertion that Armco's action is "barred by the doctrines of laches, waiver and/or estoppel" or that it is "barred by the terms of the policy."

■ Similarly, the Court does not find that Home is estopped from raising this defense based upon its handling and investigation of Plaintiff's claim. Any acknowledgment of liability by an insurer can be seen as inducing an insured to wait in filing suit and serve as the basis for estoppel or waiver. *See, e.g., Hounshell v. American States Insurance*, 67 Ohio St.2d 427, 429, 424 N.E.2d 311 (1981). Still, "[t]he process of investigation in determining liability by an insurer does not constitute a waiver by that insurer." *Thomas v. Allstate Insurance Co.*, 974 F.2d 706, 710 (6th Cir.1992). Estoppel is usually a question of law and fact. *Andres v. City of Perrysburg*, 47 Ohio App.3d 51, 56, 546 N.E.2d 1377 (1988). However, the Court can find no evidence put forth by Plaintiff that would allow a reasonable jury to conclude that any acknowledgments of liability were made within the allowable period of the suit limitation clause—prior to March 1, 1995— and could thus serve as the basis for estoppel. *See Friendly Farms v. Reliance Insurance Co.*, 79 F.3d 541, 545 (6th Cir.1996) (acts or conduct giving rise to estoppel must have

---

1. The suit limitation clause in the Home policy states:

 21. **SUIT:** No suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months next after discovery by the Insured of the occurrence which gives rise to the claim. Provided, however, that if by the laws of the State within which this policy is issued such limitation is invalid, then any such claims shall be void unless such action, suit or proceeding commenced within the shortest limit of time permitted by the laws of such state.

occurred within the suit limitation clause contained in the policy).

■ Armco also contends that there is an ambiguity in Home's policy with respect to whether the suit limitation clause even applies and that the ambiguity should be construed against Home and in favor of Armco. "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *Lane v. Grange Mutual Companies,* 45 Ohio St.3d 63, 65, 543 N.E.2d 488 (1989). Armco claims that ambiguity as to the applicability of the suit limitation clause exists because the clause is found in the boilerplate language of the policy while the language that was written specifically for Armco contains a paragraph regarding service of process and jurisdictional questions related to legal actions arising under this policy that does not mention the limitation on suits. Armco further claims that ambiguity exists since the policy requires Armco to present to Home notice of intent to file a claim for certain losses within 12 months of the loss, the same amount of time as the suit limitation clause provides for filing suit under the policy. While these provisions and requirements may show that the suit limitation clause is unreasonable, as addressed below, or simply that the contract does not serve Armco well, they do not create an ambiguity as to the applicability of the clause and a reasonable jury could not find it susceptible to more than one interpretation.

■ However, Armco's contention that this suit limitation clause is unreasonable and therefore unenforceable is not without merit. An action on a contract is typically subject to a fifteen year statute of limitations. Ohio Rev.Code § 2305.06. Nonetheless, "an insurance policy may limit the time for an action on the contract to less than fifteen years if a reasonable time for suit is provided." *Lane,* 45 Ohio St.3d at 64, 543 N.E.2d 488. In opposition to Home's Motion for Summary Judgment, Armco argues that it would be unreasonable to enforce the suit limitation clause under the circumstances of this case. Viewing the evidence in the light most favorable to Armco, the Court cannot find that the one year suit limitation clause is reasonable as a matter of law. Instead, disputes of material fact exist as to the reasonableness of this clause and the existence of circumstances excusing delay under it such that summary judgment in favor of Home is not warranted. *See Order of United Commercial Travelers of America v. Duncan,* 221 F.2d 703, 707 (6th Cir.1955) (reasonableness of suit limitation clause is question for the jury where disputed or if extrinsic facts are alleged that excuse delay in bringing suit). A reasonable jury could certainly find this suit limitation clause to be unreasonable.

Accordingly, Home's Motion for Summary Judgment with regard to the suit limitation clause is hereby **DENIED.**

## 2. Co–Insurance Penalty

■ Home, as the secondary insurer, is providing difference in conditions ("DIC") coverage to Armco, meaning that it agreed to provide coverage, subject to its own limitations and conditions, to the extent that a loss is not covered by or exceeds the limits of the insurance provided by Reliance, the primary insurer. Reliance's policy contained a co-insurance clause, by which it was agreed that if Armco sustained actual losses in excess of the potential value of those losses as estimated prior to the incident, a penalty would be assessed against it. A co-insurance penalty will be assessed by Reliance arising out of the business interruption loss that serves as the basis for this action. This penalty is a deduction from the amount of total recoverable loss found to exist under the Reliance policy for Armco's failure to insure to the full value of its losses. Armco alleges that Home, as the provider of DIC coverage, is responsible for covering the amount of the penalty, since its policy is intended to insure for any losses not covered or in excess of the amount of recoverable loss under the Reliance policy.

■ Home has moved the Court for summary judgment on this issue, claiming that it is not responsible for this amount, while Armco, in its Motion for Partial Summary Judgment Against Home, seeks a declaration that Home is liable for the amount of the penalty as a matter of law. Where no dis-

pute of material fact exists, the existence or extent of coverage of an insurance policy is a question of law. *Gomolka v. State Automobile Mutual Insurance Company*, 70 Ohio St.2d 166, 167, 436 N.E.2d 1347 (1982).

The obvious intent of a co-insurance clause is to reward those who insure for full value and to punish those who insure for less than the value of their risk. Once assessed, a coinsurance penalty reduces the compensable claim and the loss that may be stated for insurance purposes due to an insured's failure to properly insure the risk. This amount is not loss in excess of or not covered by primary insurance and does not constitute recoverable loss under DIC coverage. It is clearly addressed by the primary insurer and intended to be imposed as a cost to the insured. It is simply an obligation of Armco. Home is correct in its contention that to hold otherwise would allow an insurer to underinsure its property, at less expensive premiums, and then simply recover any penalty assessed for that from its secondary insurer, for whose coverage the insured has likely paid even less expensive premiums.

Accordingly, Home's Motion for Summary Judgment with regard to the co-insurance penalty is hereby **GRANTED.**

### 3. Bad Faith

■ Plaintiff Armco also brings a claim of bad faith against Home. Specifically, in Armco's Complaint, it is alleged that this Defendant has "dealt in bad faith with Armco, breached its express and implied duties of good faith and fair dealing to Armco, [and] breached the terms of the Home policy." Home argues that Plaintiff has not offered sufficient evidence in support of its allegations and that summary judgment is therefore warranted.

■ An actionable claim of bad faith does not exist when an insurer may have exercised poor judgment or may have been negligent in the handling of a claim. Bad faith involves deliberate wrongdoing with the intent to mislead or breach a known duty. *See Wasserman v. Buckeye Union Cas. Co.*, 32 Ohio St.2d 69, 73, 290 N.E.2d 837 (1972). However, "[a]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Insurance Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397, at Syllabus (1994). Viewing the evidence in the light most favorable to Plaintiff, evidence does exist upon which a reasonable jury could base a finding of bad faith. This includes Home's adjuster's initial opinion that it owed Armco nothing under its policy if Reliance had to pay anything, and the adjuster's initial representation that the underwriter of the policy agreed with that opinion, since evidence exists that the underwriter, in fact, did not, share that view.

Accordingly, Home's Motion for Summary Judgment with regard to Plaintiff's claim of bad faith is hereby **DENIED.**

### 4. Armco's Failure to Make a Claim

■ Last, Home claims that Armco's suit is premature since Armco has yet to demand a quantifiable amount in coverage from Home. Home contends that it is entitled to summary judgment on this basis or, in the alternative, to a bifurcated trial that would require Armco to first proceed against Reliance in order to determine Reliance's liability as the primary insurer before proceeding against Home. Armco responds that it is required to join Home as a necessary party to this action and to assert its claims against Home now under Fed.R.Civ.P. 19.

An entity should be joined in an action if its interest related to the subject of the action is such that disposition of the action would impair or impede that interest or leave any of the entities already a party to the action at substantial risk of incurring inconsistent obligations as a result of separate actions and separate judgments. Fed. R.Civ.P. 19(a)(2). Plaintiff Armco has stated well in its Memorandum in Opposition to Home's Motion for Summary Judgment the reasons why Home's interests may be impaired and how inconsistent judgments may result if Home is not a party to the instant action and the Court need not repeat those reasons here. Home is clearly a necessary party to this action and is not entitled to

summary judgment or bifurcation based upon its contention that Armco's suit against it is premature.

Accordingly, Home's Motion for Summary Judgment with regard to Plaintiff's failure to make a claim against them is hereby **DENIED.**

## B. Plaintiff's Motion for Partial Summary Judgment Against Reliance

### 1. "SUB" and "SUT" Payments

█ Plaintiff moves the Court for partial summary judgment against Reliance on two issues. First, Plaintiff claims that it is entitled to coverage for amounts paid for supplemental unemployment benefits ("SUB") and state unemployment taxes ("SUT") under its policy with Reliance as a result of the business interruption it experienced in 1994. Reliance's policy states that it will cover "salaries and wages of officers, executives, employees under contract and other essential employees, as well as pensions and directors' fees" but it did not extend coverage to "ordinary payroll expense." Armco insists that SUB and SUT payments are not ordinary payroll expense and therefore covered, while Reliance contends that they are ordinary payroll expense and are not covered. "Ordinary payroll expense" is not defined within the policy.

Plaintiff argues that SUB and SUT payments cannot be considered ordinary payroll expense because these payments are contingent upon an employee being thrown out of work. According to Plaintiff, SUB and SUT payments are not made by it during a period of employment, but rather are paid by the state while an employee is not employed by it. By this reasoning, SUB and SUT payments are not ordinary payroll expense but instead a benefit paid to employees when they are not on the payroll of the employer.

Reliance replies that ordinary payroll expense is defined in the policy by what it is not: the salaries and wages of officers and executives. The policy excludes from coverage the cost of "ordinary" workers' payroll. According to Reliance, SUB and SUT payments are accumulated depending upon the number of hours a week an employee works

and are paid based on the number of weeks the employee doesn't work. Therefore, Reliance concludes, these payments are a necessary cost, or expense, related to ordinary payroll and, as such, are not covered by its policy.

█ As stated above, provisions of an insurance contract that are reasonably susceptible of more than one interpretation will be construed strictly against the insurer and liberally in favor of the insured. *Lane*, 45 Ohio St.3d at 65, 543 N.E.2d 488. However, if a contractual term's meaning cannot be determined from the four corners of a contract, a dispute of material fact exists requiring a determination of the intent of the parties. *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.*, 15 Ohio St.3d 321, 322, 474 N.E.2d 271 (1984). This may include an examination of any commercial or technical meaning acquired by usage and intended to be used by the parties. *See Gomolka*, 70 Ohio St.2d at 172–173, 436 N.E.2d 1347. The meaning of the term "ordinary payroll expense" in the policy is not clear and Plaintiff is not entitled to coverage of the SUB and SUT payments as a matter of law. A reasonable jury could find in favor of Reliance on this issue.

█ Similarly, Plaintiff's argument that these payments are recoverable as expenses incurred in mitigation of damages because making such payments was less than paying employees their full salaries while the facility was idled fails. Reliance is correct in its assertion that the provision in its policy requiring the insured to reduce its loss is clearly intended to apply to insurable loss. Plaintiff itself admits in its Motion that it had a duty to mitigate damages "for the insurer's benefit," not the insured. It would clearly be against the terms and intent of the policy to find that Armco is entitled to reimbursement for SUB and SUT payments as costs incurred in mitigating loss, since the loss such payments mitigate, the salaries of employees or "ordinary payroll expense," is not recoverable.

Accordingly, Plaintiff's Motion for Partial Summary Judgment Against Reliance with

regard to the issue of SUB and SUT payments is hereby **DENIED**.

### 2. The Deductible

Second, Plaintiff claims that the $1,000,000 deductible provided for in the policies issued by the insurers applies to its combined $10,000,000 coverage and, therefore, Reliance and Home are only entitled to the benefit of one half of the $1,000,000, rather than a $1,000,000 deductible for their benefit and a $1,000,000 deductible for the benefit of Lloyds. Reliance appears to concede this point and there is no dispute as to the amount of the deductible or its applicability to each carrier's policy. Therefore, it appears that there is no conflict for this Court to resolve on this issue.

Accordingly, Plaintiff's Motion for Partial Summary Judgment Against Reliance with regard to the deductible applicable to its policy is hereby **DENIED AS MOOT**.

### C. Plaintiff's Motion for Partial Summary Judgment Against Home

### 1. Ordinary Payroll Expense

Plaintiff moves the Court for summary judgment on several issues related to Home's provision of DIC coverage for Plaintiff's business interruption loss. First, it moves the Court to hold as a matter of law that, as the provider of DIC coverage, Home is liable for ordinary payroll expense—including SUB and SUT payments, if determined to be ordinary payroll expense—because it is not covered under Reliance's policy. However, Home concedes, in principal, that it would be liable for this expense and Plaintiff itself states in its Motion that Home has acknowledged "that it was responsible for the gap created by the ordinary payroll exclusion." In addition, as addressed above in the Court's analysis of Plaintiff's Motion for Partial Summary Judgment Against Home, the issue of whether SUB and SUT payments are or are not "ordinary payroll expense" cannot be resolved as a matter of law. Therefore, the Court need not address this issue.

Accordingly, Plaintiff's Motion for Partial Summary Judgment Against Home with regard to the issue of ordinary payroll expense is hereby **DENIED AS MOOT**.

### 2. Co–Insurance Penalty

Plaintiff next moves the Court to hold as a matter of law that Home is required to provide coverage to it for the amount of the co-insurance penalty assessed to Plaintiff by Reliance. Plaintiff is not entitled to coverage under the Home policy for the amount of any co-insurance penalty imposed by Reliance under its policy as addressed above in the Court's analysis of Home's Motion for Summary Judgment.

Accordingly, Plaintiff's Motion for Partial Summary Judgment Against Home with regard to the issue of the co-insurance penalty is hereby **DENIED**.

### 3. Period of Restoration/Indemnity Period

■ Plaintiff also moves the Court for summary judgment on the issue of whether Home, as the secondary insurer, is liable for any gap created between what is called the "period of restoration" under the policy issued by Reliance and what is called the "indemnity period" under the policies issued by Home and Lloyds. Reliance's policy provides coverage for losses that occur within a period of restoration, which is defined as the period between the time of the incident causing the business interruption and the date when the damaged equipment is repaired or replaced. Home's and Lloyds' policies provide coverage for losses that occur within an indemnity period, defined as the period between the time of the incident causing the business interruption and the date when, with due diligence, the insured's business is restored to the condition that would have existed had no loss occurred. Armco contends that any difference in costs between the time of the period of restoration and the indemnity period, or the costs of so called "ramp up" for Armco's business after the damaged equipment was repaired or replaced, is the obligation of Home as a matter of law.

Home insists that Armco's contention that it is liable for any such period is without

merit. After the business interruption arose, Armco decided not to put the failed equipment back in operation and instead decided to perform a major capital improvement project that would render the failed equipment obsolete. This project necessitated the formation of an agreement as to what the period of restoration would have been and it is undisputed that an agreement was reached limiting the period of restoration to three months. Home contends that the agreement to limit the period of restoration was between all parties and it was intended that there would be no subsequent indemnity period. In addition, Home asserts that Lloyds did not provide coverage for any claimed difference between the period of restoration and the indemnity period and, as such, no gap of coverage exists for which Home is liable. However, Armco responds that Home was not a party to the agreement limiting the period of restoration to three months, there was no intention to limit the indemnity period by that agreement, and Home is clearly liable for coverage of any loss incurred in the time between the different periods of recoverable loss as they are defined in Armco's policies with Reliance and Home.

 A waiver of the terms of a written insurance policy may be either by subsequent contract, written or oral, or by the acts and conduct of the parties. *Ohio Farmers' Insurance Co. v. Cochran,* 104 Ohio St. 427, 135 N.E. 537 (1922). An insurance policy may be subsequently modified by a parol agreement. *Coletta v. Ohio Casualty Insurance Co.,* 96 Ohio App. 70, 80, 121 N.E.2d 148 (1953). Armco presents persuasive evidence in support of its assertions that the agreement to limit the period of restoration to three months was made only between itself and Reliance, not Home, and that there was no intent to limit the indemnity period. However, Home has put forth credible evidence in support of its contentions that the agreement was between all parties and that the intent was that there was to be no subsequent indemnity period, or ramp up costs, for which Home would be liable to Armco. This includes an admission made after the agreement by an agent of Armco's provider of risk management services that, even in light of unresolved issues related to coverage of the

co-insurance penalty and ordinary payroll expense, Home's liability still would likely be "to a small extent, if any." Therefore, viewing the evidence, together with all inferences that can permissibly be drawn therefrom, in the light most favorable to Home, the Court cannot conclude that no reasonable jury could return a verdict for Home on this issue. Disputes of material fact exist as to the existence of an agreement between these parties and the intent of that agreement as it relates to the indemnity period that preclude summary judgment.

Accordingly, Plaintiff's Motion for Partial Summary Judgment Against Home with regard to the issue of the period of restoration and the indemnity period is hereby **DENIED.**

## 4. The Deductible

As in its Motion for Partial Summary Judgment Against Reliance, Plaintiff claims that the $1,000,000 deductible provided for in the policies applies to its combined $10,000,000 coverage and, therefore, Reliance and Home are only entitled to the benefit of one half of the $1,000,000, rather than a $1,000,000 deductible for their benefit and a $1,000,000 deductible for the benefit of Lloyds. Home, like Reliance, appears to concede this point and there is no dispute as to the amount of the deductible or its applicability to each carrier's policy. Therefore, it again appears that there is no conflict for this Court to resolve on this issue.

Accordingly, Plaintiff's Motion for Partial Summary Judgment Against Home with regard to the deductible applicable to its policy is hereby **DENIED AS MOOT.**

## 5. Estoppel

 Last, Plaintiff moves the Court to find that Home is estopped from relying upon Lloyds' adjustment of Plaintiff's business interruption loss due to Home's refusal, in violation of the terms of its contract with Plaintiff, to utilize the same adjuster for Plaintiff's loss as Lloyds used. The Court finds that estoppel is not appropriate in this situation.

Under its policy with Armco, Home was obligated to use the same adjuster for determining Armco's business interruption loss as Lloyds used. However, Home fired this adjuster in violation of the policy. As a result, Armco claims that Home should be estopped from using the results of the work performed by Lloyds' adjuster and that the portion of Armco's claim submitted to Home should be adjusted completely independently from the adjustment of the portion of its claim submitted to Lloyds. Otherwise, Armco insists, Home will utilize the opinions of Lloyds' adjuster when it benefits Home, such as if its calculation of the loss is less than Home's adjuster determined, but not utilize its opinions when it does not serve Home well, such as Lloyds' adjuster's opinion that Home is responsible for the co-insurance penalty.

Home responds that it fired Lloyds' adjuster because the adjuster had a conflict of interest and had asserted coverage positions on behalf of Home that were outside the scope of Home's policy. Home claims that it endorses the position taken by Lloyds in adjusting Armco's loss, and therefore it is not benefitting from its termination of Lloyds' adjuster. Home contends that it simply does not endorse the position of Lloyds' adjuster regarding the existence of differences in conditions that Home must cover. Furthermore, Home argues that Lloyds' adjustment of the loss must be considered in order to determine if any gaps in coverage exist between Lloyds' policy and Reliance's.

The doctrine of equitable estoppel is derived from the concept that one cannot change his position once another has acted in reliance thereon and, as an equitable rule, it may be invoked whenever the facts and circumstances warrant. *Andres,* 47 Ohio App.3d at 56, 546 N.E.2d 1377. Specifically, one party will not be permitted to deny something which by his words, acts, or silence has induced another to rely reasonably and in good faith to his detriment. *First Federal S. & L. Association v. Perry's Landing, Inc.,* 11 Ohio App.3d 135, 463 N.E.2d 636 (1983). In its Motion, Plaintiff seeks to estop Home from using the work or opinions of Lloyds' adjuster, as its policy required, and instead asks that this Court require Home to

utilize only the work and opinions of the adjuster that Home retained in contravention of the policy. This unusual request is unsupported by any evidence that Plaintiff was actually induced by Home to rely ɯo its detriment upon this act by Home. Estoppel, more logically, could be warranted to require Home to act in conformity with the contract and only use Lloyds' adjuster's work and opinions. Plaintiff, however, seeks to require Home to act in a manner directly contrary to any representation upon which Plaintiff may have relied. For this, estoppel will not lie.

Accordingly, Plaintiff's Motion for Partial Summary Judgment Against Home with regard to the issue of estoppel is hereby **DENIED.**

## IV. CONCLUSION

For the reasons set forth above, Defendant Home Insurance Company's Motion for Summary Judgment is hereby **GRANTED IN PART AND DENIED IN PART,** Plaintiff's Motion for Partial Summary Judgment Against Defendant Reliance National Insurance Company is hereby **DENIED IN PART AND DENIED AS MOOT IN PART,** and Plaintiff's Motion for Partial Summary Judgment Against Defendant Home Insurance Company is hereby **DENIED IN PART AND DENIED AS MOOT IN PART.**

**IT IS SO ORDERED.**